**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| S.E., et al., | No. CV-22-02011-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Knight Transportation Incorporated, et al., | |
| Defendants. | |

Pending before the Court is the parties' joint notice of discovery dispute. (Doc. 124.) The Court concludes that oral argument is unnecessary and rules as follows.

As background, this is a diversity action stemming from a March 2019 collision between a motorcycle that was being driven by Julio Cesar Medina ("Medina") and a tractor-trailer that was owned by Knight Transportation, Inc. ("Knight") and was being driven by Danny George Sowers ("Sowers"). (Doc. 3-1.) Medina was killed during the collision. (*Id.*) In this action, Medina's minor children (together, "Plaintiffs") assert negligence-based claims against Knight and Sowers. (*Id.*)

The discovery dispute concerns Plaintiffs' desire to conduct a Rule 35 physical examination of Sowers. (Doc. 124.) Plaintiffs contend the requested examination is necessary because one of their theories of liability is that Sowers, who admittedly was not wearing corrective lenses for distance vision at the time of the accident, should have been doing so. (*Id.* at 2.) Although Plaintiffs believe they already have some proof that Sowers should have been wearing corrective lenses for distance vision when driving—for example,

Sowers's commercial driver's license includes the notation "RESTRICTIONS: B-Corrective Lens Must Be Worn"—the issue remains disputed because "Defendants are taking the position that Sowers was *not* required to wear corrective lenses for distance vision while driving and that the B restriction on his driver's license could mean he was required to wear corrective lenses for near vision (*i.e.*, reading glasses), not distance vision." (*Id*.) Plaintiffs continue: "Plaintiffs asked Defendants to stipulate that Sowers was required to wear corrective lenses for distance vision while driving, and thus eliminate the need for an eye exam, but Defendants refused." (*Id.* at 3.) Meanwhile, Defendants confirm they are unwilling to "stipulate to Plaintiff's request regarding distance vision" but contend the requested examination is still unnecessary because (1) they "have already admitted Defendant Sowers' negligence and that he was acting within the scope and course of his employment with Defendant Knight at the time of the accident"; (2) "Plaintiff has failed to provide any evidence that Defendant Sowers' eyesight was a contributing factor to the accident"; and (3) "Defendant Sowers already admitted he was not wearing corrective lenses for distance at the time of the accident." (*Id.* at 5-6.)

Rule 35 provides the starting point for evaluating these objections. Under Rule 35(a)(1), "[t]he court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Meanwhile, under Rule 35(a)(2)(A), such an order "may be made only on motion for good cause and on notice to all parties and the person to be examined." As the Supreme Court has explained, "Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements . . . are necessarily related." *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). "The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule

26(b)." *Id.* at 118 (cleaned up).

Rule 35's "in controversy" and "good cause" requirements are both satisfied here. There is an unresolved controversy over whether Sowers was required to wear a particular type of corrective lens (which, all parties agree, he was not wearing) at the time he was involved in the accident that killed Plaintiffs' father. If Sowers was in fact required to wear those lenses while driving, a factfinder could easily conclude that his failure to do so was negligent. And although Defendants have stipulated to the *fact* of Sowers's negligence in causing the accident, they have not stipulated to his *degree* of negligence. As Plaintiffs correctly note in their portion of the joint statement: "Although Defendants have admitted Sowers' negligence, they will not agree that Sowers was 100% at fault for Decedent's death and are making a comparative fault claim against Decedent. . . . Whether Sowers was required to wear corrective lenses for distance vision at the time of the crash, which he was not wearing, is directly relevant to the degree of Defendants' fault. Plaintiffs are entitled to present the results of an eye examination to the jury, to be considered in its determination of degrees of fault." (*Id.* at 4.)[1]

Defendants' next objection is that the requested examination will not, in fact, produce any information about Sowers's visual acuity at the time of the accident. Defendants contend that "it is unclear how Plaintiffs' expert ophthalmologist can opine that an eye exam and visual acuity test today could and would establish whether Sowers required corrective lenses for distance vision at the time of the subject accident almost six ago." (*Id.* at 6.) Defendants further note that Sowers's "eyesight has significant declined due to ongoing health issues since his deposition in May 2024," which renders it even more unlikely that an examination today would reveal relevant information about his eyesight in March 2019. (*Id.*) In response, Plaintiffs contend: "Per Plaintiffs' expert ophthalmologist, an eye exam and visual acuity test today could and would establish whether Sowers required corrective lenses at the time of the subject crash approximately six years ago. If

---

[1] This conclusion makes it unnecessary to address the parties' arguments over the relevance of the requested examination in supporting claims for aggravated negligence and/or punitive damages.

Sowers is nearsighted today, then he was nearsighted 10 years ago. While his eyesight could have declined over the past 6 years, he would not suddenly be nearsighted today if he was not nearsighted 6-10 years ago. Myopia (nearsightedness) stays stable in middle age and Sowers is currently 62 years old." (*Id.* at 3.)

Plaintiffs have the better of this argument. At most, Defendants have identified a possibility that the requested examination will not yield relevant information about Sowers's visual acuity as of March 2019, even though Plaintiffs' expert believes the examination will be useful for that purpose. The mere possibility that the examination will prove unhelpful does not undermine the existence of good cause.

Defendants' final argument is that the requested examination should be disallowed because it would result in an undue burden on Sowers. (Doc. 124 at 8.) Defendants elaborate: "Since the accident occurred, Defendant Sowers['s] health has severely declined. According to information received from his daughter, he is currently living in a skilled nursing facility, which is in stark contrast to his health condition at his deposition in May 2024. He can no longer walk and has been bed ridden for the last six months. Furthermore, his eyesight and memory have significantly declined. Given Defendant Sowers' current medical condition, he is not in the place to undergo an eye exam." (*Id.* at 5.) Plaintiffs respond as follows: "[T]his joint brief is the first time Plaintiffs are receiving confirmation that Sowers is bedridden. Plaintiffs request a written declaration regarding Sowers' medical condition as it relates to his inability to travel to an ophthalmologist's office to undergo an eye exam. Plaintiffs will require additional time to determine whether an eye exam can be performed bedside, at Sowers' skilled nursing facility." (*Id.*)

This issue presents a close call. On the one hand, the Court is sympathetic to Sowers's medical condition and does not wish to expose him to any unnecessary demands. On the other hand, Plaintiffs have established a clear entitlement to more information about Sowers's visual acuity at the time of the accident (and Defendants' refusal to stipulate on that issue has placed it firmly in controversy). Under the circumstances, the best path forward is to simply clarify through this order that Sowers must submit to a Rule 35

examination regarding his eyesight and leave it to the parties to meet and confer about where and how that examination will take place.  If the parties are unable to resolve those issues after meeting and conferring, they may raise their dispute through another joint notice.

Accordingly,

**IT IS ORDERED** that the parties' joint discovery dispute (Doc. 124) is **resolved** as set forth above.

Dated this 27th day of January, 2025.

Dominic W. Lanza
United States District Judge